**Vernon E. ROSS, Plaintiff-Appellant,**

v.

**Elliott RICHARDSON, Secretary of Health, Education and Welfare, Defendant-Appellee.**

No. 20529.

United States Court of Appeals,
Sixth Circuit.

April 9, 1971.

Barkan, Barkan & Neff, Frank J. Neff, Columbus, Ohio, for appellant on brief.

William D. Ruckelshaus, Asst. Atty. Gen., Morton Hollander, Robert M. Feinson, Attys., Dept. of Justice, Washington, D. C., William W. Milligan, U. S. Atty., Columbus, Ohio, for appellee on brief.

Before WEICK, MILLER and KENT, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

This action was brought by appellant pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the decision of the Secretary to terminate the disability benefits appellant had been receiving since 1963. Appellant's disability was determined in 1963 after surgery to correct a back in-

jury, and payments of disability insurance began. They continued through a second surgery in 1966. The Secretary terminated the benefits on November 15, 1968, on the ground that appellant was no longer disabled within the meaning of section 216(i) (2) (D) of the Act, 42 U.S.C. § 416(i) (2) (D). Appellant pursued an administrative hearing before a Hearing Examiner at which he appeared personally and was represented by counsel. The Hearing Examiner conducted a de novo review of the record and also heard witnesses. On May 22, 1969, the Hearing Examiner ruled that appellant was no longer disabled and was no longer entitled to disability insurance benefits. The Appeals Council having denied further review, appellant instituted this action for review in the United States District Court. The Secretary moved for Summary Judgment which was granted by the District Court on the basis of its finding that the decision of the Secretary was supported by substantial evidence. This appeal followed.

In our review of the decision of the Secretary and the District Court, we are bound by their findings of fact if supported by substantial evidence. Rose v. Cohen, 406 F.2d 753 (6th Cir. 1969); Wolf v. Gardner, 386 F.2d 295 (6th Cir. 1967). If there is substantial evidence the Secretary's findings must be approved by us even if we would have taken a different view of the evidence as the triers of fact. King v. Celebrezze, 341 F.2d 108, 109 (6th Cir. 1965). We turn to a review of the record to determine whether there was substantial evidence to support the Secretary's findings.

Appellant is forty-two years of age and has a sixth grade education. He did various manual jobs as a young man until learning to do automotive work. He considered himself an expert mechanic before a back injury sustained in 1957 when he fell from a garage hoist. This injury necessitated surgery in 1962, including a laminectomy and a spinal fusion. An initial application for disability benefits was denied in 1963 but later was awarded on reconsideration. Twice in 1963 appellant was placed in a body cast to immobilize his back after a fracture in the spinal fusion occurred. A second laminectomy was performed in 1966, and a third body cast was applied. Until 1968 appellant was under the periodic care of Dr. Herbert Knodt, an orthopedic surgeon, who reported appellant as disabled on several occasions. In July, 1968, appellant changed physicians when he came under the care of Dr. Lewis Huesmann, an orthopedic surgeon. The change in physicians was evidently precipitated when appellant's scheduled surgery for removal of internal fixation devices from previous operations was postponed due to an emergency in the hospital and appellant, feeling that Dr. Knodt was refusing to operate, left the hospital without being discharged. The devices have never been removed.

In October, 1968, at the request of the Social Security Administration state agency, appellant was examined by Dr. Robert B. Larrick, an orthopedic surgeon, and Dr. Dwight Palmer, a psychiatrist. The record includes their reports, and presumably it was upon their findings that the Secretary initially decided to terminate the appellant's benefits. The record also includes a written report by Dr. Huesmann, who examined appellant at bimonthly intervals from July 9, 1968, until December 2, 1968.

The reports of the doctors and the transcript of the hearing show that appellant has continually complained of pain and numbness in the lower back and along the spine, of brief dizzy spells and periods of unconsciousness, and of attacks of paralysis in both arms and legs. He also complained of continuous numbness in both legs and of pain along the back of his legs. He stated that these symptoms have developed since the second laminectomy in 1966.

The report of Dr. Huesmann, appellant's doctor, revealed limited ability to flex the lumbar spine, and also that appellant's leg raising was restricted. He

concluded that appellant had a post-laminectomy syndrome consisting of the above described symptoms, which probably would not improve. He rated appellant as "100% permanently disabled due to the persistent pain, stiffness, and inability to move and do even the lightest type of menial work." Dr. Larrick, while also noting that appellant experienced pain while performing movements during the orthopedic examination, and finding that there was limited back flexion and mobility, noted further that appellant's mobility improved considerably during unannounced observation. He found that appellant's reported weakness in performing tests was incompatible with other observed activities such as dressing, sitting, and standing. This finding is consistent with Dr. Huesmann's observation that appellant could easily remove his clothing.

Dr. Larrick further stated that he could not explain the upper limb paralysis or black-outs in any way organically related to the lower back disorders. He concluded that "while his functional capacities should be quite adequate for sustained activities or medium activities that did not throw excessive stress on the low back, his capacities are inadequate for the work he is equipped to do by virtue of education and past work experience."

At the hearing in May, 1969, appellant Ross, Dr. Henry B. Lacey, a medical advisor, and Dr. Harold Starr, a vocational consultant, testified. The Hearing Examiner explained that the latter two individuals were called in to aid the Examiner as disinterested experts whose only previous connection with the case was to review the administrative record to date at the request of the Hearing Examiner.

Appellant testified about his persistent pain and inability to bend or stoop. He maintained that he had not worked since the accident in 1957 on doctor's orders. He reiterated his statements as to almost daily recurrences of the black-out spells, although he stated that no doctor had ever seen him during such a spell. Most of his testimony was a repetition of information already in the various reports and entries in the record.

Dr. Lacey was called to render opinions and explanations of the medical evidence in the file. He explained under questioning by the Hearing Examiner the nature of the surgical procedures that had been performed on the appellant. The Examiner questioned Dr. Lacey closely about Dr. Huesmann's report. He stated that apart from appellant's continued complaints of pain, the second surgery could be described as successful. He could not state whether the failure to remove the internal fixation devices might have contributed to appellant's symptoms, but he felt that the presence of the devices in appellant's body, while evidently not too serious at the present, could become serious in the future. Of Dr. Huesmann's report he concluded that while some pain and discomfort were consistent with the limited mobility reported, he disagreed with the finding that appellant was completely disabled and stated that he would encourage such a patient to engage in work without repetitive bending, lifting, or stooping, although he felt that a limited amount of each of these exercises would be therapeutic. When questioned about Dr. Larrick's comment that the appellant moved more easily during unannounced observation, he stated that this fact was indicative of the appellant's usual status. He also stated that there is no organic basis related to the lower back condition to explain the intermittent episodes of upper limb paralysis, continuous severe pain in the spine, and numbness and pain in the legs. On cross-examination Dr. Lacey reiterated his opinion that a person with appellant's history might be expected to return to full unrestricted activity.

Dr. Starr, a Ph.D. in clinical psychology, was called as a consultant on vocational placement and jobs in the econo-

my. His testimony was essentially in response to the following question:

Q Assume that I find that the claimant has the following impairment: He underwent a laminectomy and fusion as described by the doctor back around 1960 and another fusion because the original fusion sight [sic] had become mobile so that from L4 to S1 he has a solid fusion right now. He does have occasional residual pain in the fusion area, tenderness of the fusion sight [sic] and the donar sight [sic]. The extent of his pain and discomfort is such, and the result of his surgery is such, that, according to Dr. Lacey, he should not do repetitive bending, stooping, lifting, kneeling, or carrying weights above 25 pounds. Let's make it above 20 pounds. On the basis of those assumptions have you formed an opinion as to the claimant's residual work capabilities?

In response, Dr. Starr stated that there were several jobs existing in the national economy consistent with the residual capacities of appellant, the restrictions placed on his movements, and his education and experience. Among such jobs were parking lot attendant, machine tender, and hand packager. The recurrent black-out spells would, he felt, militate against the machine tender position only.

The Examiner concluded from the testimony and the record that the appellant's complaints of pain and discomfort were not organic and were not supported by the findings of either Dr. Huesmann or Dr. Larrick. Further, he found that while the severe pain, blackouts and dizziness were not demonstrable by medically acceptable laboratory techniques, these symptoms were the only reasons that Dr. Huesmann reported appellant 100 per cent disabled. On the basis of the record and testimony the Hearing Examiner found:

1. Claimant has some residual pain and discomfort resulting from a laminectomy and two fusion operations prior to 1964. By October 1968, he had sufficiently recovered therefrom so as to be able to engage in work which did not require repetitive bending, stooping, lifting or kneeling or carrying weights above twenty pounds.

2. Such work would be work as a parking lot attendant, machine tender and hand packager.

3. The evidence fails to establish that claimant's impairments prevented him from engaging in substantial gainful activity after December 1968.

It is my decision that claimant is not entitled to a period of disability and disability insurance benefits after December 1968.

The District Court found that there was substantial evidence to support the finding that appellant was not entitled to a period of disability, particularly Dr. Larrick's "testimony" that appellant was capable of light work coupled with the testimony of the vocational expert, Dr. Starr, concerning jobs presently available in the national economy.

Appellant urges on appeal that the evidence of Dr. Larrick, Dr. Lacey and Dr. Palmer, all of whom saw appellant on only one occasion, is not substantial when compared with evidence of physicians who treated appellant over a longer period of time. This approach is not without authoritative support. See Colwell v. Gardner, 386 F.2d 56 (6th Cir. 1967; Miracle v. Celebrezze, 351 F.2d 361 (6th Cir. 1965); Massey v. Celebrezze, 345 F.2d 146 (6th Cir. 1965). We observe, however, that this case involves a decision to terminate benefits in 1968. Thus the 1968 evaluation of appellant, represented by Dr. Larrick's report of that year, cannot be said to be any less authoritative than the report of Dr. Huesmann, who also examined appellant several times in 1968. The opinion of Dr. Lacey was admissible to aid the Examiner in arriving at a decision, and his view of Dr. Huesmann's report is

substantiated by Dr. Larrick's report. See Colwell v. Gardner, *supra*. It is the function of the Secretary and his Examiner to evaluate and resolve conflicts in the medical testimony. We do not try these cases de novo. See Lane v. Gardner, 374 F.2d 612 (6th Cir. 1967) and King v. Celebrezze, *supra*.

Appellant points out that Dr. Larrick stated that appellant's residual capacities were not adequate for the work he is equipped to do by virtue of his education and past work experience. Appellant argues that his finding is not inconsistent with the opinions of Drs. Knodt and Huesmann that he is permanently disabled. Dr. Larrick's opinion, as indicated by the appellant, was not only a medical judgment, but also involved an estimation of the possible limited jobs which would be available to the appellant. Yet, the vocational consultant, Dr. Starr, testified that there were jobs in the national economy available to persons with appellant's residual capacities. Appellant contends that Dr. Starr's testimony should be discounted since he was merely commenting on the file and Dr. Lacey's testimony at the hearing. We do not agree. The Act in defining disability states:

(A) An individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions

of the country. 42 U.S.C. § 423(d) (2) (A).

In view of the manner in which the Hearing Examiner phrased his question concerning residual capacities to Dr. Starr, *supra*, and given the broad statutory provision related to work and work experience, we cannot say that Dr. Starr's testimony and the other evidence noted above, may not be taken as substantial evidence that appellant is no longer disabled within the meaning of the Act. See Whitt v. Gardner, 389 F. 2d 906, 910–911 (6th Cir. 1968). Our review being thus limited in scope, it becomes irrelevant that there is doubtless evidence to the contrary. Accordingly, the judgment of the District Court is affirmed.

Affirmed.