**Mary E. GENTRY**

v.

**Elliot RICHARDSON, Secretary of Health, Education and Welfare.**

**Civ. A. No. 7533.**

United States District Court,
E. D. Tennessee, N. D.

May 3, 1972.

Jennings B. King, Knoxville, Tenn., for plaintiff.

John L. Bowers, Jr., U. S. Atty., Knoxville, Tenn., for defendant.

MEMORANDUM

ROBERT L. TAYLOR, District Judge.

Plaintiff seeks a review of an adverse decision by the Secretary of Health, Education and Welfare denying her disability insurance benefits under the Social Security Act. 42 U.S.C. §§ 416(i), 423. The defendant has moved for summary judgment on the ground that the only question is whether substantial evidence supports the decision and that such evidence is in the record. 42 U.S.C. § 405(g).

Plaintiff has met all requirements for disability benefits except for establishing that she was under a disability as defined by the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. The inability to engage in any substantial gainful activity exists only if the impairments are of such severity that a plaintiff, considering his age, education and work experience, cannot engage in any kind of substantial gainful work which exists in the national economy regardless of whether such work exists in his immediate locale or whether a specific job vacancy exists for him or whether he would be hired if he applied for work. A physical or men-

tal impairment is one that results from anatomical, psychological or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. Plaintiff is not considered under a disability unless she furnishes such medical or other evidence of such disability as the Secretary may require. 42 U.S.C. § 423(d).

This case is unusual in one respect. Plaintiff last met the special earnings requirement for disability benefits on December 31, 1963. Therefore, she must have been disabled prior to that date. Further, she did not apply for benefits until July 29, 1969. In order to be entitled to benefits, the disability must have continued to within fourteen months of her application therefore, that is, until May 29, 1969. 42 U.S.C. § 416(i)(2)(E). The Hearing Examiner acknowledges that she may have technically been disabled as of December 31, 1963, but he specifically found that she has not been disabled since 1964.

Plaintiff is a 36-year old female who has completed high school and two years of business college. She is proficient in typing, shorthand and the use of all types of business machines. Her first job after completion of secretarial training was as secretary to a dentist whom she also assisted in some dental procedures. She next worked as a secretary at the Knoxville Y.M.C.A. From approximately 1956 until her marriage in 1959, she worked at the Levi Strauss plant in Knoxville. At first she was a bookkeeper and did some typing. At the time she left Levi Strauss she was private secretary to the plant office manager. On her marriage she left town and was unemployed until she returned in 1961. On this occasion, she worked for reappraisers of city property; however, she had to leave after three weeks for health reasons.

She described her medical history in detail in her testimony. This testimony includes her statement that she has been unable to walk more than two city blocks without her heart beginning to pound, experiencing shortness of breath and weakness in her limbs. She testified that she generally stays at home, but goes to church weekly and goes shopping for groceries with her husband, and attends monthly meetings of the Order of the Eastern Star. She does her own housework but her husband and her mother, who lives next door, help her with vacuuming, mopping and other heavy chores. She stated that she could not work as a secretary. She believes that she would experience symptoms of her heart ailment if she went back to work for Levi Strauss because of the fatigue she anticipates. In support of this claim she described an experience where she helped with her church's vacation Bible School the summer before the hearing. She stated that she was completely exhausted on returning home and was not able to do any house work. She had to go to the doctor afterwards.

The medical records in this case show the plaintiff has been regularly treated by Dr. J. E. Acker, Jr., a Board certified specialist in internal medicine. His reports show that he has seen her since 1956 when his diagnosis was congenital complete heart block. He states that she has done relatively well during the year prior to her foregoing hospitalization. In his medical report for the Social Security Administration dated August 1, 1969, he reported:

"She had congenital heart block with Stokes-Adams seizures, and in 1961 required treatment with a cardiac pacemaker. Her initial response was good but subsequently marred by the presence of recurrent episodes of complete heart block due to failure to respond to her pacemaker. It was found during a visit to the University of Minnesota during January 1962 that this was due to a wire which was broken just beneath the skin. This was repaired and she subsequently did well. She was admitted to the University of Tennessee on several occasions because of infection of the sinus tract surrounding her external-inter-

nal wire. This became a great problem and accordingly on 3-17-64 implantation of a Chardack cardiac pacemaker, subcutaneous was made thought [sic] a left lateral incision following which this was closed and the sinus tract which was found to be infected by a hemolytic staph aureus coagulase positive organism was dissected free. Mrs. Gentry had a very smooth post operative course.

"She had replacement of her pacemaker battery on 3-2-65 and again in April of 1968."

The final diagnoses in this report state that she is capable of engaging in normal activities.

In a hospital discharge sheet dated November 16, 1960, he states that she had had several episodes of syncope and was hospitalized for complete heart block. She was released and readmitted three days later because of recurrent syncope. In the second admission, Stokes-Adams seizures with definite asystole was diagnosed as the cause of the seizure. She was placed on an external pacemaker at the hospital but none was implanted.

In a discharge sheet dated February 26, 1961, Dr. Acker stated that the plaintiff had had no difficulty until the day before admission when she had a Stokes-Adams seizure followed by another one on the day of admission. On February 15, 1961, a pacemaker electrode was implanted on the surface of the left ventricle. Plaintiff was discharged with the pacemaker. In a discharge sheet dated June 20, Dr. Acker states that since some wires were switched in her pacemaker her course had been uneventful. She was hospitalized on this occasion after an office examination revealed increased density over the left lower lung field accompanied by pleuritic type of left chest pain.

Other medical records include a letter dated August 29, 1961, by Dr. Jacob T. Bradsher, Jr., a Board certified specialist in thoracic surgery, addressed to Dr. Acker wherein he states that by changing the electrodes of the pacemaker its performance was altered to a regular response which it maintained throughout the hospital stay. In a discharge sheet signed by Dr. C. G. Peagler, a Board certified specialist in thoracic surgery, dated March 29, 1964, it is stated that a new Chardack cardiac pacemaker was implanted in plaintiff on March 17, 1964, and her post-operative course was uneventful.

A discharge sheet dated March 9, 1965, signed by Dr. F. L. Rawson, a Board certified specialist in internal medicine, states that plaintiff had been doing well since implantation of the Chardack pacemaker until the night of her admission on February 26, 1965. On admission, except for a systolic murmur which was heard along the left sternal border, her physical examination was normal. It was determined that her dizziness was the result of a defective battery in the pacemaker which was replaced on March 2, 1965. Dr. Rawson states that plaintiff had "an excellent response to her pacemaker."

In a discharge sheet dated April 11, 1968, Dr. Bradsher stated that plaintiff had not been hospitalized since February, 1965; that when he saw her in his office on March 15, 1968, she was "doing well" and that because of the duration since the last pacemaker implantation a new unit was planted on April 8, 1968. He also stated that her response after replacement was good and that she had no post-operative difficulties. This appears to be the last hospitalization or treatment plaintiff has had concerning her heart difficulties. As can be seen, there is no indication of plaintiff's inability to engage in any substantial gainful activity since March of 1964.

The weakness in plaintiff's case is the absence of any medical evidence showing that since 1964 plaintiff has been unable to perform the duties of her former oc-

**1120**

cupation or of any other light and sedentary work. There is an inference from her own testimony that she might not be able to withstand the strain of normal office pressures on a sustained basis. However, she has offered no medical proof to support this contention. On the contrary, Dr. Acker's report of August 1, 1969, to the Social Security Administration in no way suggests that plaintiff is disabled or has had any difficulty since the Chardack pacemaker was implanted on March 17, 1964. He reported that except for the sinus tract infection she "did well" with her first pacemaker once the broken wire was repaired. Subsequent operations were normal pacemaker maintenance. His "diagnosis" in that report indicates, as the Hearing Examiner found, that she had the capacity to engage in normal activities despite her heart condition. In addition, Dr. Rawson stated on May 4, 1965, that plaintiff had "an excellent response to her pacemaker." Dr. Bradsher reported that on March 15, 1968, in an office visit, plaintiff was doing well and had no complaints. Her response to the replacement pacemaker implanted on April 8, 1968, was good with no post-operative difficulties.

Since she has the burden of proving her disability and since all the evidence showing disability relates to the period prior to implantation of the Chardack pacemaker in March, 1964, there is substantial evidence to support the Hearing Examiner's finding that plaintiff has not been disabled within the meaning of the Social Security Act since 1964. Accordingly, it is ordered that defendant's motion for summary judgment be, and same hereby is, granted. See Halsey v. Richardson, 441 F.2d 1230 (C.A.6, 1971); Ross v. Richardson, 440 F.2d 690 (C.A.6, 1971); Ragan v. Finch, 435 F. 2d 239 (C.A.6, 1970).

The record does not justify a remand to the Secretary for an additional hearing.