786 F.2d 1166
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
BOBBY G. RATLIFF, Plaintiff-Appellant
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 85-5447
 United States Court of Appeals, Sixth Circuit.
 2/24/86
 
 E.D.Tenn.
 AFFIRMED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE
 Before: KEITH and MARTIN, Circuit Judges; and BERTELSMAN,* District Judge.
 PER CURIAM.
 
 
 1
 Bobby Ratliff appeals the Secretary's denial of Social Security disability benefits and supplemental Security Income. After a hearing on April 23, 1984, the administrative law judge denied Ratliff's claims, holding that although Ratliff had a severe impairment, he was able to perform past relevant work. The Appeals Council denied review of the administrative law judge's decision, and the district court affirmed.
 
 
 2
 At the time of the hearing, Ratliff was forty-nine years old. He has completed the tenth grade. Ratliff appeared pro se at the hearing, and the record regarding his past relevant work experience is therefore not fully developed. Ratliff's most recent position was as a chemical or cascade operator for Union Carbide Corporation. This position, which Ratliff held for seven years, involved opening and closing valves, walking for three hours a day and standing for two, climbing stairs, bending, and riding a bicycle. Ratliff missed work due to illness from April to November, 1981. For the last three years of his employment, Ratliff was prohibited from lifting more than thirty-five pounds, and had to have someone with him at all times. Union Carbide requested him to sign a waiver of workmen's compensation benefits in order to continue working.
 
 
 3
 Ratliff's application for Social Security benefits is based on his claim that he is disabled due to problems with his heart, lungs, back, nerves and arthritis. He testified that his back and legs give way when he stands for as much as twenty minutes, that his right arm swells when he uses it, and that his right hand swells when he attempts manual labor.
 
 
 4
 The administrative law judge found that Ratliff has a history of coronary artery disease, hypertension, chronic obstructive pulmonary disease, hiatal hernias and osteoarthritis without nerve root compression. As he stated, 'the medical records are consistent in showing that the claimant's ability to perform basic work activites, including heavy lifting, bending, pushing and pulling has been limited. The undersigned has concluded that the claimant does have a severe impairment.' The administrative law judge further determined, however, that Ratliff had the residual functional capacity to perform past relevant work despite his severe impairment.
 
 
 5
 Ratliff's history of heart complaints have been most recently diagnosed as angina secondary to coronary heart disease. In June of 1981 Ratliff was diagnosed as having arteriosclerotic heart disease manifested by borderline obstructive lesion of the main left coronary artery and right coronary artery. Cardiac tests taken in April and October 1983 showed normal sinus rhythm, normal stress thallium and heart scans, and routine cardiac workup.
 
 
 6
 The claimant's lung ailments have been attributed to chronic obstructive pulmonary disease and asthmatic bronchitis with expiratory wheezes, by both the treating and consulting physicians.
 
 
 7
 Ratliff's arthritis and back problems have been consistent. In December of 1982 Veteran's Administration records showed degenerative changes of the lumbar spine. In April, 1983 Ratliff was hospitalized for evaluation and treatment of lumbar radiculopathy. At that time he underwent a partial hemilaminectomy. In October, 1983 the consultative physician noted that the straight-leg raising was positive and that Ratliff's bending was limited. X-rays of the lumber spine showed degenerative arthritis. Dr. Tyler, the neurosurgeon who performed Ratliff's hemilaminectomy, examined Ratliff in July, 1983 and found moderate paraspinal muscle spasm. Physical examination showed moderately decreased range of motion of the lumbosacral spine and an area of tenderness at the S[1] joint on the right. Dr. Tyler diagnosed osteoarthritis without nerve root compression.
 
 
 8
 The State Agency's reviewing physician, without examining Ratliff, concluded that the claimant could do medium work with standing and walking six hours a day. In contrast, the consulting physician, Dr. Misra, concluded that Ratliff should avoid bending, lifting, pushing and pulling. Dr. McMillin, a treating physician, indicated that Ratliff's combined impairments rendered him unable to do most labor jobs.
 
 
 9
 The standard for appellate review of a denial of Social Security benefits is whether the Secretary's decision is supported by substantial evidence. 42 U.S.C. Sec. 405(g) (1982); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). If the findings of the Secretary are supported by substantial evidence, the Court is bound by these findings. Ross v. Richardson, 440 F.2d 690, 691 (6th Cir. 1971). Substantial evidence 'means such relevant evidence as a reasonable mind might accept to support a conclusion.' Richardson v. Perales, 402 U.S. 389, 401 (1971). It must be 'more than a mere scintilla.' Lashley v. Secretary of Health & Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).
 
 
 10
 We do not believe that the Secretary's decision that the claimant could perform his past relevant work is supported by substantial evidence. The claimant's prior work as a cascade operator required climbing stairs, riding a bicycle, frequent walking and bending, and opening and shutting valves. The administrative law judge made no attempt to discover the degree of effort required in this last activity. The administrative law judge found that Ratliff had a severe impairment in his osteoarthritis, yet held that he had the residual functional capacity to perform work-related activities.
 
 
 11
 The medical evidence in the case almost invariably portrays the claimant as being unable to do any frequent bending, lifting, pushing or pulling. The two residual functional capacities performed by the treating physicians both indicated than the plaintiff was unable to lift regularly more than ten pounds, and could never lift more than twenty pounds. The latest medical statement on the record by the treating physician indicated that the plaintiff could do no more than sedentary work.
 
 
 12
 The only possible basis for the administrative law judge's conclusion is the residual functional capacity made in November, 1983, by a reviewing physician who never even saw the claimant. According to the Social Security Administration's own preference, the residual functional capacity should preferably be recorded by a physician who has examined the claimant: '[t]he Social Security Administration should perform a residual functional capacity only when one is not available through the treating physician.' PPD No. 16, SSR 78-8 (Aug. 1980). See also Floyd v. Finch, 441 F.2d 73, 107 (6th Cir. 1971). ('[A] determination of a Hearing Officer based on the evidence of a physician making a single examination, as contrasted with the evidence of a physician who had been treating claimant over a period of years, would not be sustained by substantial evidence.')
 
 
 13
 The administrative law judge determined that the claimant could perform medium work, defined in 20 CFR Sec. 404.1567(c) as 'lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.'
 
 
 14
 Judgment reversed, the case is remanded to the district court with direction that it be further remanded to the Secretary for the award of benefits.
 
 
 
 *
 The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation