798 F.2d 468
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Paula J. BOLES, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 85-5495.
 United States Court of Appeals, Sixth Circuit.
 June 25, 1986.
 
 Before MARTIN and GUY, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant Paula J. Boles appeals the Secretary's denial of Social Security disabilty and disability insurance benefits. 42 U.S.C. Sec. 405(g) (1982). Boles' first application for disability benefits was denied initially and on reconsideration. She did not make a timely filing for judicial review of this determination. The present appeal involves her second application, which was also denied both initially and on reconsideration. Boles' request for a hearing in the case was granted, and the administrative law judge denied benefits. Additional evidence was submitted to the Appeals Council, which declined to disturb the administrative law judge's decision. In federal court, the magistrate's report recommended affirming the decision of the Secretary. The district court adopted this recommendation and granted the Secretary's motion for summary judgment denying disability benefits.
 
 
 2
 At the time of the hearing, Boles was forty-four years old. She has completed the twelfth grade. Boles' past relevant work experience was as a detail clerk in catalogue sales. Boles described this work as requiring walking two hours per day, standing one hour per day, sitting five hours per day, and lifting fifty pounds or less. She has also worked as an office clerk and as a cosmetologist. Boles last worked in December of 1979.
 
 
 3
 Boles' application for disability benefits is based on incapacity due to cervical sprain and dysthymic disorder. Her cervical sprain apparently resulted from a fall at work in October 1978, and was aggravated by another fall in September of 1979. Since these accidents, claimant has continued to have constant pain in her neck and right shoulder, which she claims is disabling within the meaning of the Act. A chest x-ray taken at the time of the first accident was normal, and a cervical spine film revealed minimal posterior spurring at C5-6 without deviation or effect of the nerve rootlets, Dr. Everette I. Howell, Jr., a neurosurgeon and claimant's treating physician, stated that there were no objective neurological deficits. Dr. Howell further stated: 'I do not think the defect at C5-6 can explain the assortment of complaints that Mrs. Boles has. I really have nothing to offer Mrs. Boles. I have advised that she obtain psychological or psychiatric help to work with her problems."
 
 
 4
 After the claimant's second fall in September of 1979, Dr. Jonathan Ivey found tenderness over the posterior aspect of the cervical spine and moderate muscle spasm, but no muscular atrophy. He treated her with a head and halter traction, physiotherapy, ultrasound, hot packs, analgesics and antispasmodics. Botli Dr. Ivey and Dr. Katherine G. Wolfe concluded that Boles was totally disabled as a result of cervical sprain and cervical disc syndrome. In 1982 Dr.lvey referred the claimant to Dr. James Crick to determine whether she had lupus erythematosis. After a negative FANA in July 1982, Dr. Crick tapered her medication for lupus and reported that although the diffuse pains that led to the initial diagnosis of lupus were a chronic condition, they were not disabling. Dr. Crick noted, however, that the claimant was seen by other physicians for other problems and this may contribute to her overall disability. Dr. Crick remarked, "I suspect that Mrs. Boles' diffuse pains and muscle aches will continue to be a chronic problem and based on her response over the last year, I do not anticipate a great deal of further improvement, or significant worsening ... At the present time, the problems for which I am treating Mrs. Boles are not disabling and her medications should not impair her ability to work."
 
 
 5
 A physical therapist, Janet L. Chumney, submitted a report dated August 1982 in which she reported that Ms. Boles had a dorsal kyphosis and increased cervical lordosis, that the range of motion of the cervical spine was considerably restricted in all ranges, all movements of the neck produced severe pain, as did active and passive movement of the left shoulder.
 
 
 6
 Dr. Marshall Parker, an orthodontist, noted on November 15, 1982, that & Ms. Boles was about four millimeters overclosed with her relaxed musculature, that the movements of her mandible were posteriorly and laterally displaced and that she did not close her mandible on a relaxed trajectory. It was Dr. Parker's opinion that Ms. Boles severed the ligaments that attach to the posterior portion of the disc in her temporomandibular joint.
 
 
 7
 Boles' psychiatric state has also been thoroughly tested. Dr. Kenneth Anchor administered a battery of tests to her on August 3, 1983, including the MMPI, Wechsler Adult Intelligence Scale, and the Wide-Range Employabilty Sample test. As a result of Dr. Anchor's testing and diagnostic interview, he reported the following:
 
 
 8
 Findings from the standardized work sample procedures indicated several areas of deficit. Ratings were as follows:
 
 
 9
 Upper Body Range of Motion Requisite to Adequate Job Performance: Very Poor
 
 
 10
 Error Proneness: Poor capacity to management Stressful Work Conditions: Poor
 
 
 11
 Grip Strength Necessary for Adequate Job Performance: Very Poor
 
 Literacy Level: Average
 Tolerancy for Fine Detail: Poor
 
 12
 Tolerance for Routine and Repetition:Below Average
 
 Coping Resources: Poor
 
 13
 Social Skills: Below Average------Head and Neck Rotation Necessary for Adequate Job Performance: Poor
 
 Performance: Poor
 Problem-solving Skills: Below Average
 Perseverance: Below Average
 
 14
 Flexibility in Addressing Work Assignments:Below Average
 
 
 15
 Eye-Hand-Foot Coordination: Below Average Tactile Recognition: Average
 
 Arm-Hand Steadiness: Below Average
 Finger Dexterity: Below Average
 Manual Dexterity: Below Average
 Multi-limb Coordination: Below Average
 
 16
 Need for Close or Constant Supervision:Average
 
 
 17
 Dr. Anchor stated Ms. Boles personality test indicated dysthymic disorder of a prolonged nature with chronic pain. He found no evidence of a psychosomatic condition or functional overlay. Dr. Anchor concluded that in view of Ms. Boles' age, education, prior work experience, and current condition, she would encounter serious difficulty in sustaining gainful employment at any level of exertion unless she were to achieve significant recovery.
 
 
 18
 Boles testified that her pain starts at the base of her neck and it goes out down her shoulder and down her arm and that it goes up the back of her neck. She testified that her pain is constant pain. The claimant drives her car only occasionally, walks only short distances, stands no more than five minutes, sits from forty-five minutes to an hour, does not do her housework, cooks very little, and has no interest in sexual relations. While Boles' parents supported her testimony concerning her pain, there was contradictory testimony on the extent of Boles' household activities.
 
 
 19
 The claimant's first argument is that the decision of the Secretary denying disabilty benefits was not based on substantial evidence, as required by 42 U.S.C. 5 405(g) (1982). Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). If the findings of the Secretary are supported by substantial evidence, this Court is bound by those findings. Ross v. Richardson, 440 F.2d 690, 691 (6th Cir. 1971). Substantial evidence "means such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). It must be "more than a mere scintilla." Lashley v. Secretary of Health & Human Services, 708 F.2d 1048, 1053 (6th Cir.1933). We believe that the Secretary's decision that Boles does not" suffer from a severe impairment is supported by substantial evidence. Almost all of the physicians diagnosed chronic cervical strain; none have diagnosed herniated disc or degenerative disc disease. Every treating physician, with the exception of Dr. Katherine Wolfe, believed that the claimant has sustained no more than a fifteen percent disability to her body as a whole. From the claimant's point of view, the evidence was in conflict at best, and conflicts in the evidence are for the Secretary, not the courts, to resolve. Myers v. Richardson, 471 F.2d 1265 (6th Cir.1972).
 
 
 20
 Boles next argues that the administrative law judge incorrectly rejected her allegations of pain. In this regard, the administrative law judge stated:
 
 
 21
 In considering the claimant's complaints of pain, the lack of clinical findings indicative of a severe impairment and the negative diagnostic studies have been considered. It should also be noted that the claimant is not required to take prescription medication and that she has stated on several occasions that she shops and drives as she wishes. The claimant did not appear at the hearing wearing the TNS unit or neck brace she states she is required to wear and she certainly did not appear to be in pain at any time during the hearing. The claimant's credibility was seriously damaged by her own contradiction of her testimony and her mother's further contradiction of the claimant's prior testimony. In view of the negative medical findings and the claimant's testimony, her description of her symptoms, alone, is not considered persuasive evidence that she has any disabling condition. See section 404.1508.
 
 
 22
 This situation is distinguishable from the cases cited by the claimant. In Martin v. Secretary of Health & Human Services, 735 F.2d 1008, 1010 (6th Cir.1984), the administrative law judge's rejection of the claimant's allegations of pain was reversed by this Court because it was based solely on the administrative law judge's observations at the hearing. The Martin court observed "[a]lthough the Administrative Law Judge who recommended denial of [claimant's] Social Security claim 'found claimant's candor to be excellent,' he nonetheless deduced from her demeanor at the hearing that her claim of severe an disabling pain not substantiated." Id. at 1010. The Court goes on to cite with approval the following language from Weaver v. Secretary of Health & Human Services, 722 F.2d 310, 312 (6th Cir.1983):
 
 
 23
 Additionally, we find that the ALJ did not deal correctly with the issue of pain. The ALJ discounted Weaver's complaints of pain, as we read the ALJ's opinion, solely on the basis of his own observation of Weaver at the hearing. While we recognize that observation and credibility are factors in this complicated equation, and as such are material, relevant, and admissible, we cannot allow the dismissal of a claim for pain solely on the ALJ's observations at the hearing. This procedure amounts to the infamous and thoroughly discredited "sit and squirm" test. We do not imply that there was no evidence in the record from which the ALJ could not draw the inference of a lack of pain. However, the ALJ must cite some other evidence for denying a claim for pain in addition to personal observation.
 
 
 24
 [emphasis added] We believe that ample evidence existed in the record to support the administrative law judge's conclusion concerning Boles' pain. The absence of prescription medication, her contradictory and controverted testimony regarding her capabilities, as well as her demeanor during the hearing were all appropriately considered in the administrative law judge's decision; therefore, his conclusion will not be overturned.
 
 
 25
 Boles' last argument is that the district court erred in finding that she failed to follow medical advice. We need not reach this issue, however, because we find that the administrative law judge's conclusion that the claimant was not suffering from a severe impairment to be supported by substantial evidence. The administrative law judge carefully considered the psychiatric evidence submitted to him, and found that it did not establish any impairment which would prevent the claimant from returning to her past relevant work. The district court's additional analysis does not alter the original conclusion, which we believe was supported by substantial evidence.
 
 
 26
 Judgment affirmed.