72 F.3d 131
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Douglas E. WARD, Plaintiff-Appellant,
v.
COMMISSIONER, SOCIAL SECURITY, Defendant-Appellee.
 No. 95-2140.
 United States Court of Appeals, Sixth Circuit.
 Dec. 4, 1995.
 
 Before: BATCHELDER and MOORE, Circuit Judges, and ENSLEN, District Judge.*
 PER CURIAM.
 
 
 1
 Douglas E. Ward ("Ward"), appeals the district court's order affirming the final decision of the Commissioner of Social Security ("Commissioner") denying Ward's application for social security disability insurance benefits. For the reasons that follow, we affirm the denial of benefits and the refusal to remand the case for reconsideration.
 
 I.
 
 2
 Ward was born with an extra lumbar vertebra, which can cause back problems. It is uncertain when Ward began to complain of back pain. There is some evidence to show that Ward has been having back trouble since as early as 1962. Ward has been involved in several workplace accidents, which have aggravated his back condition over the years. There are numerous reports and evaluations in Ward's medical history. He receives workers' compensation from his employer and must therefore submit to periodic medical examinations. He also receives disability benefits from the Veteran's Administration (VA). In October 1978, Ward had surgery to repair damage to the L5-S1 disc. His condition improved after this surgery and he resumed working.
 
 
 3
 Between November 1982 and August 1990, Ward was examined by at least nine physicians, all of whom found either only mild problems or no abnormalities. These treating physicians opined that Ward's complaints of pain were exaggerated, inconsistent with the objective medical findings, and not entirely credible. Ward was encouraged to increase his physical activity and to return to work, with some limitations.
 
 
 4
 In May 1990, Drs. McCardie and Yoder examined Ward and pronounced him totally and permanently disabled, referring Ward to a chronic pain clinic. Dr. McCadie stated that he had filled out a "Functional Capacity" worksheet in support of his findings, but the only words on the worksheet were "No," next to a question about the patient's ability to return to work, and the diagnosis of permanent total disability. The only reason given for this diagnosis was Ward's complaints of chronic pain.
 
 
 5
 In October 1991, ten months after Ward's insured status expired, an MRI revealed a small herniated disc. At that time, nothing was done about it, but in February 1992, the VA recommended a discectomy. In January 1993, Ward underwent the suggested discectomy and spinal fusion. He was discharged from the hospital in good condition.
 
 II.
 
 6
 On November 25, 1991, Ward had applied for disability benefits pursuant to Title II and part A of Title XVIII of the Social Security Act, alleging that he became disabled on December 24, 1989. The Social Security Administration ("SSA") determined that Ward did not have a disabling condition at the time his insured status expired, based on medical records, Ward's own statements, and his ability to work. The SSA further found that, based on medical records, Ward had suffered no severe nerve damage or weakness in his arms and legs, and thus had the residual capacity to continue working. His application for benefits and request for reconsideration were denied.
 
 
 7
 Ward received a hearing before an administrative law judge (ALJ) and testified that he tried to take walks every day, from half a mile to a mile, that he sometimes mowed the lawn and helped his wife with the housework, that he can only lift about ten pounds, can only stand for about twenty minutes at a time, and can drive short distances. A vocational expert testified at the administrative hearing that, in her opinion, Ward would be unable ever to perform his past relevant work as a set-up man and tool room attendant, but that a worker with Ward's disabilities and limitations would be able to perform light, sedentary, unskilled work and that approximately 56,500 such jobs existed in the region.
 
 
 8
 After reviewing the record, the ALJ found that Ward had a severe back impairment but one which did not meet or equal a disability in the Listing of Impairments. See 20 C.F.R. Pt. 404, Subpt. P, Appendix 1. The ALJ further found that Ward retained the residual functional capacity to perform a full range of sedentary and light work with limitations placed on lifting, standing, bending, twisting, and turning. Because a significant number of jobs exist in the regional economy which Ward can perform, he was not considered to be under a disability as defined by the Social Security Act. 20 C.F.R. Sec. 404.1520(f). The ALJ's ruling became the final decision of the Commissioner when the Appeals Council denied Ward's request for review and refused to remand the case for reconsideration of "new" evidence presented to them. Ward then filed a civil action in United States District Court. After reviewing the record in its entirety, the district judge concluded that the Commissioner's decision was supported by substantial evidence and granted summary judgment in favor of the Commissioner. This timely appeal followed.
 
 
 9
 Ward argues that this Court should remand the case to consider new evidence because evidence of his surgery in January 1993 and MRI finding in October 1991 support an inference that he was disabled at the time his insured status expired. Ward also claims that the medical evidence in the record is tainted because many of the medical evaluations were performed by workers' compensation evaluators "hired by Ward's employer to find that he could return to work." The issues presented are thus: (1) whether the district court erred when it failed to remand the case for consideration of additional evidence; and (2) whether the final decision of the Commissioner is supported by substantial evidence.
 
 III.
 
 10
 A denial of social security disability benefits will not be reversed on appeal unless the decision of the Commissioner was not supported by substantial evidence. 42 U.S.C.A. Sec. 405(g) (West 1982): Richardson v. Perales, 402 U.S. 389, 401 (1971). If substantial evidence supports the Commissioner's decision, the court is bound by those findings. Ross v. Richarson, 440 F.2d 690, 691 (6th Cir.1971). Substantial evidence means such evidence as a reasonable person might accept to support a conclusion. Perales, 402 U.S. at 401.
 
 
 11
 A district court may order additional evidence to be taken before the Commissioner only if the claimant can show (1) that the evidence is new evidence (2) that is material to the case and (3) that there was good cause for the failure to present the evidence at the prior proceeding. 42 U.S.C.A. Sec. 405(g) (West 1983) (emphasis added). In order for the claimant to establish materiality, he would have to show that the introduction of the evidence would have reasonably persuaded the Commissioner to reach a different conclusion. Sizemore v. Secretary of Health and Human Servs., 865 F.2d 709, 711 (6th Cir.1988). Ward failed to meet this burden. Throughout the hearing in September 1992, Ward and the ALJ discussed Ward's back pain and his prior surgeries. The medical evidence indicated that there was suspicion of a small herniated disc in October 1991. That evidence was presented at trial. Ward told the ALJ that he had surgery scheduled for December 1992. He told the ALJ that the surgery was to fuse his discs together. Ward now seeks to have his case reconsidered because the evidence of his subsequent surgery in January 1993, supposedly shows that his complaints of chronic pain were not exaggerated and that his disability was more severe than the medical evidence of his evaluating physicians had reported.
 
 
 12
 However, the evidence of both the aggravating condition and the forthcoming surgery were before the ALJ at the time of the administrative hearing. The only fact which now exists but which could not be presented to the ALJ in September 1992 was the actual performance of the surgery in January 1993. The performance of surgery already contemplated by the ALJ at the time of the hearing is not "new evidence." That fact is merely cumulative to the facts already discussed by the parties. Because the ALJ already had the evidence of Ward's imminent surgery before him, there is little chance that the presentation of evidence of the completed surgery would result in a different outcome in this case.
 
 
 13
 Ward next claims that the Commissioner's decision is not supported by substantial evidence. He bases this claim on his belief that the Commissioner failed to make adequate credibility findings, placed undue weight on "employer/evaluators," and improperly evaluated Ward's complaints of pain. Ward's claims of inadequate credibility findings and improper evaluation of pain complaints are really one and the same issue and will therefore be addressed together. The regulations establish a two-step process for evaluating complaints of pain. First, the claimant must establish the presence of a medically-determinable impairment that could reasonably be expected to cause pain, then the Commissioner must evaluate the severity and persistence of the claimant's symptoms. 20 C.F.R. Sec. 404.1529(c); see Jones, 945 F.2d at 1369-70. In evaluating the claimant's symptoms, the Commissioner should use all relevant evidence. 20 C.F.R. Sec. 404.1529(c)(1).
 
 
 14
 In this case, Ward did establish that he had a medically-determinable impairment that could reasonably be expected to cause pain. The Commissioner was therefore required to determine whether Ward's symptoms were severe enough and sufficiently persistent to warrant a finding that Ward's testimony was credible. The ALJ found that Ward retained the residual functional capacity to perform a limited range of light or sedentary work. The medical evidence supports this finding. Nine doctors stated that Ward would be able to return to work with restrictions and that he merely needed to increase his physical activity. The medical evidence does show that Ward cannot return to his past relevant work as a machine set-up man or a tool room attendant, but the regulations state that when a claimant's disability is so severe as to prohibit the performance of past relevant work, the Commissioner must consider such factors as age, education, work experience, and residual functional capacity. 20 C.F.R. Sec. 416.920(f). The ALJ considered that Ward was 48 years old at the time of the administrative hearing, that he has technical training and a college education, and that he owned and operated a sporting goods store, stocking shelves, using the cash register and teaching archery. The Commissioner's findings were supported by substantial evidence as to Ward's residual functional capacity.
 
 
 15
 Ward also claims that the ALJ erred by commenting that Ward did not appear to be in pain at the hearing. The ALJ may consider his personal observations at the hearing, along with all the relevant evidence, so long as the ALJ does not rely solely on his own impressions to make his decision. Atterbury v. Secretary of Health and Human Services, 871 F.2d 567, 571 (6th Cir.1989). The ALJ determined by his observations at the administrative hearing that Ward did not seem to have constant or frequent pain and that he appeared fit and could not possibly be as inactive as he claimed. Several of the doctors that examined Ward reached the same conclusions, e.g., finding Ward's complaints of pain incredible when he still had a full range of motion, no atrophy of the muscles and good musculature in the lower limbs, and that Ward did not appear to be in any discomfort. Ward's psychological test scores showed a tendency for Ward to display himself in a worse condition than he actually is. Ward's contentions of chronic debilitating pain are contradicted by the weight of the medical evidence. Twelve doctors opined that Ward's complaints of pain were not supported by objective medical findings and that he seemed to exaggerate his pain. The ALJ had ample medical evidence to support his finding that Ward's complaints of pain were not entirely credible. There is no indication that the ALJ relied solely on his own observations at the hearing.
 
 
 16
 Finally, Ward contends that the ALJ gave undue weight to the medical evidence provided by the physicians who saw him for evaluation relating to his workers' compensation claims. He states that these evaluators repeatedly discounted his pain complaints and that the physicians he labels "treators," not related to the workers' compensation claim, found significant lumbar defects. Ward thus claims that the employer evaluators' findings are untrustworthy and should not supply substantial evidence to support the decision of the Commissioner.
 
 
 17
 However, there is no evidence that the workers' compensation physicians' evaluations are inherently unreliable or tainted. Six of the eleven physicians whom Ward labels "treators" found that Ward would benefit from increased physical activity and would be able to perform light or sedentary types of work with restrictions on lifting, bending, and twisting. One of the physicians identified by Ward's counsel at oral argument as a "key treator," Dr. Campbell, opined that Ward would benefit from increasing his activity as much as possible. In fact, fourteen of the physicians' reports included in the record indicate that Ward has exaggerated his pain, or is basically in need of increased physical activity and should return to work, with restrictions. Only one doctor opined, in wholly conclusory fashion, that Ward was permanently and totally disabled. Only one other doctor opined that Ward would not be able to return to work at all. The opinions of these two "treators" are clearly outweighed by the opinions of the other treating physicians and the evaluating physicians who examined Ward. The regulations state that the ALJ shall consider every medical opinion regardless of its source. 20 C.F.R. Secs. 404.1527(d), 404.1529(a), (c)(3) & (4). See Bradley v. Secretary, 862 F.2d 1224 (6th Cir.1988). Usually a distinction is made between examining physicians and medical experts who have not examined the claimant, but who testify at the hearing based on their review of the medical records. Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980). All of the physicians relied on in this case actually examined Ward. Substantial evidence supports the decision of the Commissioner.
 
 IV.
 
 18
 The denial of benefits is AFFIRMED.
 
 
 
 *
 The Honorable Richard A. Enslen, United States District Judge for the Western District of Michigan, sitting by designation