**Robert E. BUETTNER, Plaintiff,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.**

No. G85–747 CA.

United States District Court,
W.D. Michigan, S.D.

Feb. 8, 1988.

---

Vernon D. Kortering, Muskegon, Mich., for plaintiff.

Daniel M. LaVille, Grand Rapids, Mich., for defendant.

## OPINION

MILES, Senior District Judge.

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g). Plaintiff seeks judicial review of a final decision of the Secretary of Health and Human Services (Secretary) denying his claim for a period of disability and disability insurance benefits.

Plaintiff alleges that he became unable to work on July 1, 1982 due to systemic lupus erythematosus, Sjogren's syndrome, polycythemia, diverticulitis, fatigue, and a bad back (Tr. 215).[1] After administrative denial of plaintiff's claim, a *de novo* hearing was held before an Administrative Law Judge (ALJ) who entered a decision denying the claim. The Appeals Council adopted the ALJ's decision and plaintiff appealed to this court on August 6, 1985. By order of this court on November 25, 1985, plaintiff's case was remanded to the Secretary for re-evaluation under the new criterion for mental impairments pursuant to Pub.L. No. 98–460, § 5(c)(1). The Appeals Council referred the matter to a new ALJ who held a hearing on August 6, 1986 and issued a decision finding plaintiff not disabled. This decision, which was later approved by the Appeals Council, has become the final decision of the Secretary and is now before the court for review pursuant to motions for summary judgment filed by both plaintiff and the Secretary.

Plaintiff was born on August 26, 1937 (Tr. 61), and has completed fifteen years of formal education (Tr. 63). His relevant work history included working in the Navy as an aviation ordinanceman, a tool and die worker, and assembler (Tr. 359).

The ALJ found that plaintiff suffered from an affective disorder and a "lupus-type" impairment. In the ALJ's judgment, the medical evidence did not substantiate plaintiff's claims of debilitating pain, fatigue, and depression during the time from plaintiff's alleged onset date of July 1, 1982 through the last date plaintiff was insured,

1. Systemic lupus erythematosus (SLE) is a generalized corrective tissue disorder, affecting mainly middle-aged women, ranging from mild to fulminating, and characterized by skin eruptions similar to those seen in discoid lupus erythematosus, athralgia, arthritis, leukopenia, anemia, visceral lesions (including renal involvement, pericarditis [inflammation of sheath surrounding the heart], and pleurisy), neurologic manifestations, lymphadenopathy, fever, and other constitutional symptoms. Typically, there are many abnormal immunologic phenomena, including hypergammaglobulinemia and hypocomplementemia, desposition of antigen-antibody complexes, and the presence of antinuclear antibodies and LE cells. *Dorland's Illustrated Medical Dictionary*, (1981).

Sjogren's syndrome is a symptom complex of unknown etiology, usually occurring in middle-aged or older women, marked by keratoconjunctivitis sicca (inflammation of the membrane covering the eye near the cornea), xerostomia (dry mouth), and enlargement of the parotid glands (salivary glands); it is often associated with rheumatoid arthritis and sometimes with systemic lupus erythematosus. *Dorland's, supra.*

Polycythemia is a disease characterized by too many red blood cells. It is associated with an enlarged spleen, hemorrhages from the nose, mouth, intestinal tract, etc.

Diverticulitis is the inflammation of the diverticulum of the bowel.

December 31, 1982.[2] The ALJ determined that plaintiff had no impairment or combination of impairments which prevented him from performing basic work-related activities during the relevant time in question. Since plaintiff had no severe impairments, he was found not disabled (Tr. 12). 20 C.F.R. 404.1520(c).

The only issue before the court is whether or not there is substantial evidence in the administrative record to support the decision of the Secretary. *Ross v. Richardson*, 440 F.2d 690 (6th Cir.1971). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)); *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524 (6th Cir.1981). Moreover, the court must look at the evidence "taken as a whole." *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980).

■ Upon careful review of the record, the court finds substantial evidence to support the ALJ's findings. In reaching this result, the court finds the following factors to be particularly significant.

Plaintiff has failed to prove that his impairments were severe during the relevant time in question; that is, between July 1, 1982 and December 31, 1983. Plaintiff's alleged fatigue and joint pain are symptoms of his systemic lupus erythematosus (SLE) (Tr. 292). Similarly, plaintiff's alleged depression, Sjogren's snydrome, and diverticulitis are caused or believed to be caused by plaintiff's SLE or the medication he has taken to control his SLE (Tr. 291, 295). Therefore, a review of the medical records concerning plaintiff's SLE during the time period between July 1, 1982 and December 31, 1983 is the relevant focus of the court's inquiry. The medical evidence from this period of time supports the ALJ's conclusion that plaintiff's SLE or lupus-type impairment was not severe. Indeed, the signs and symptoms of plaintiff's condition were so equivocable that no definite diagnosis of SLE could be determined (Tr. 258).

By finding plaintiff's impairment non-severe, the Secretary made a finding that plaintiff's impairments, individually or in combination did not preclude him from performing basic work-related activities. 20 C.F.R. 404.1520(c). Basic work activities include physical attributes such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling or mental capabilities such as understanding, carrying out, and remembering simple instructions. 20 C.F.R. 404.1521. The Sixth Circuit Court of Appeals further defined the severity test by holding that "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Salmi v. Secretary of HHS*, 774 F.2d 685, 691 (6th Cir.1985); *Farris v. Secretary of HHS*, 773 F.2d 85, 90 (6th Cir.1985).

In the Fall of 1981, plaintiff's treating physician, Dr. Arden G. Alexander, wrote to plaintiff's former attorney that plaintiff's SLE was "under good control with medications which he has been able to decrease over the past year" (Tr. 207). Plaintiff's polycythemia was also being controlled by constant monitoring and phlebotomies. Plaintiff's diverticulitis was exacerbated by plaintiff's refusal to follow his prescribed diet and by plaintiff's anxiety. "I think he is a very chronically anxious individual with much psychosomatic overlay who will require considerable psychological support in order to get him thinking positively about returning to work. He is totally oriented toward a goal of receiving social security disability benefits for the remainder of his life" (Tr. 207). Dr. Alexander concluded that he could find "no

---

**2.** Plaintiff quit work allegedly due to pain and fatigue in November, 1979 (Tr. 65, 125). Plaintiff applied for social security disability and was denied by an ALJ (Tr. 48–51). Since plaintiff failed to appeal this adverse decision, plaintiff is barred from relitigating the issue of his disability prior to July 1, 1982, the date of the ALJ's hearing on plaintiff's original claim.

significant physical cause for total disability benefits. I believe psychological counseling is the only viable consideration at this point in time to aid in his returning to work" (Tr. 207).

Dr. Alexander referred plaintiff to Dr. Joseph J. Auffrey, a licensed psychologist, who interviewed plaintiff on November 9 and 25, 1981 (Tr. 250–252). Dr. Auffrey found plaintiff's thought processes realistic and well integrated "with indications of intact memory processes and problem solving abilities" (Tr. 251). Plaintiff was found to be moderately depressed. Between May 14, 1982 and July 13, 1982, plaintiff saw Dr. Auffrey for psychotherapeutic intervention (Tr. 253). Dr. Auffrey reported that plaintiff made good progress at the biofeedback training. Indeed, plaintiff was well enough to enroll in business and accounting classes at a local community college (Tr. 253). Dr. Auffrey wrote that the goal of plaintiff's rehabilitative counseling should be "at least part time productive employment" (Tr. 252).

On August 4, 1983, Dr. Alexander again described plaintiff's SLE as well controlled (Tr. 254). Although plaintiff complained of joint aches following manual labor around his house, his physician wrote that this was normal. Dr. Alexander stated that plaintiff's polycythemia was being controlled with intermittent therapeutic phlebotomies. Plaintiff was found to have full range of motion in all joints, his gait was normal and no muscle spasms were evident (Tr. 255). Dr. Alexander noted that plaintiff's depression was being helped by a prescription of Ludiomil prescribed by Dr. Auffrey (Tr. 256). Dr. Alexander reported that plaintiff continued taking college classes through 1982/1983 and expressed his hope that with education, plaintiff would be able to return to some type of non-stressful employment (Tr. 256).

Dr. Robert G. Hylland saw plaintiff on December 19 and 27, 1983. Plaintiff told Dr. Hylland that he had stopped treating with Dr. Alexander because Dr. Alexander "wasn't helping me get my social security and, as far as I am concerned, there is no way I can work" (Tr. 257). Dr. Hylland could not explain the cause for plaintiff's allegations of fatigue; therefore, he scheduled a battery of tests including a pulmonary function study, a stress test, and echocardiogram (EKG), and x-rays. The tests were all essentially normal (Tr. 260, 273, 265, 274). Dr. Hylland concluded that he could not confirm on a clinical basis the diagnosis of SLE (Tr. 258).

Dr. Ralph G. Ryan, a cardiologist, examined plaintiff and wrote on January 27, 1984 that plaintiff impressed him "on just talking to him as a sort of depressive personality whose ambition towards exercise and activity may be less than optimal" (Tr. 273). Dr. Ryan concluded that he did not "really have a good reason for Mr. Buettner to have this exertional fatigue other than a problem with self-motivation" (Tr. 274). Dr. Ryan recommended plaintiff begin bicycling, walking, or swimming (Tr. 274).

On remand, plaintiff was tested and interviewed by Dr. Ronald Kidder, a licensed psychologist (Tr. 304–320). Dr. Kidder diagnosed plaintiff as suffering from a dysthymic disorder with a poor level of adaptive behavior in the last year (Tr. 307). Plaintiff's ability to deal with stresses, function independently, and maintain attention and concentration were all determined to be poor (Tr. 308). Dr. Kidder also noted that plaintiff complained of extreme fatigue following the 2½ hour evaluation and appeared very tired (Tr. 308).

Dr. K.C. Das also examined plaintiff on remand and he too found plaintiff mildly depressed (Tr. 324). Dr. Das' diagnosis was depressive reaction with a poor level of adaptive functioning in the past year (Tr. 325). Both Dr. Das and Dr. Kidder found plaintiff's ability to deal with stress to be poor (Tr. 326, 327, 308).

However, Dr. Das and Dr. Kidder examined plaintiff in the Spring of 1986. Plaintiff's disability insured status ended on December 31, 1983. Neither Dr. Das nor Dr. Kidder gave any opinion as to how plaintiff was two years before. Based on the evidence from the relevant time period, the ALJ's determination that plaintiff's mental

condition was not severe is supported by substantial evidence.

Plaintiff argues that his SLE caused such fatigue and emotional trauma prior to 1984 that he should be found disabled. Applying the standard set out in *Duncan v. Secretary of HHS,* 801 F.2d 847, 853 (6th Cir.1986), the court must first determine whether an underlying medical condition exists. The Secretary has conceded this point. Defendant's brief, pp. 16–17. Next the court is to examine whether objective medical evidence confirms the severity of the alleged symptoms arising from the condition or whether the objectively established medical condition is of such severity that it can reasonably be expected to produce such alleged symptoms.

As noted above, plaintiff's physicians reported that plaintiff's SLE or lupus-type condition was well controlled by medication during the period of time in question. Plaintiff's polycythemia was successfully treated with phlebotomies. Plaintiff had improved to the point where he no longer needed to take his medication for SLE on August 27, 1981, although these were restarted on March 17, 1983 (Tr. 254). Plaintiff was well enough to attend college in the 1982–83 academic year (Tr. 256). As late as January 1984, the medical experts could not definitely diagnose SLE and a battery of tests designed to explain plaintiff's complaints of debilitating fatigue returned with normal findings (Tr. 258). In summary, the medical evidence does not confirm the severity of the fatigue alleged and the evidence fails to establish that plaintiff's impairments could have reasonably been expected to produce the pain alleged. Therefore, plaintiff fails to meet the pain standard of 42 U.S.C. § 423(d)(5)(A) as interpreted by the Court of Appeals in *Duncan.*

The court is also mindful that credibility determinations rest solely with the Secretary. *Myers v. Richardson,* 471 F.2d 1265 (6th Cir.1972). Although subjective evidence of pain and disability is one of the elements to be considered in determining whether plaintiff is disabled, such evidence must be evaluated with due consideration for credibility, motivation, and medical evidence of an impairment. *Halsey v. Richardson,* 441 F.2d 1230, 1236 (6th Cir.1971); *Rolenaitis v. Richardson,* 336 F.Supp. 1235, 1237 (E.D.Pa.1972), *aff'd,* 475 F.2d 1396 (3rd Cir.1973). The ALJ had an opportunity to observe the demeanor of the plaintiff, evaluate what was said in the light of how it was said and consider how it fit with the rest of the evidence before him. Therefore, the ALJ's determination as to credibility should not be disregarded lightly. *Beavers v. Secretary of Health, Education and Welfare,* 577 F.2d 383 (6th Cir. 1978).

Accordingly, plaintiff's motion for summary judgment is denied, defendant's motion for summary judgment is granted, and the complaint is hereby ordered dismissed.