892 F.2d 1043
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Melody CROUCH, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 89-1446.
 United States Court of Appeals, Sixth Circuit.
 Jan. 3, 1990.
 
 Before BOYCE F. MARTIN, Jr. and BOGGS, Circuit Judges and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant Melody Crouch appeals from a district court order affirming the Secretary's final decision that she was not disabled and, therefore, not entitled to disability insurance benefits. For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 On October 20, 1986, claimant Crouch filed an application for disability benefits, alleging a disability onset date of July 23, 1985, because of systemic lupus erythematosus (lupus) and a back injury. The Secretary denied claimant's application both initially and upon reconsideration. Claimant then requested a hearing before an administrative law judge (ALJ).
 
 
 3
 The following evidence was introduced at the hearing, which was held on July 8, 1987.
 
 
 4
 Claimant was born on July 3, 1951, and completed high school with a GED. She worked as a salesperson in a jewelry store, a clerk in the meat department of a grocery store, and a cashier at a fast food restaurant. Claimant stated that she had been unable to work since July 1985[1] due to the symptoms she experienced as a result of lupus and from nerve root irritation resulting from a bulging lumbar disc. She testified that because of the lupus she experiences fatigue, joint pain, confusion, headaches, and flu-like symptoms such as low-grade fevers and nausea. She testified that the disc and nerve root problems cause low back pain which radiates into her left leg and limits her ability to sit, stand or sustain any activity for more than 10-30 minutes without resting.
 
 
 5
 On January 25th, 1985, claimant was hospitalized because of pain in her lower back. A myelogram was performed revealing a mild anterior extradural defect consistent with either a bulging annulus or mildly protruding disc. Spine x-rays revealed mild disc space narrowing at L4-L5. To relieve these symptoms, claimant underwent chemonucleolysis, the dissolution of the nucleus pulposus of a disc by injection of a chemolytic agent.
 
 
 6
 On April 3, 1985, claimant saw Dr. Friedman because she had been experiencing pain and discomfort in her legs and back. An examination revealed that claimant had a normal gait and was able to walk on her toes and heels. The motor examination was normal. Straight leg raising resulted in pain on the left side at approximately 70 to 80 degrees, but was normal on the right. Sensations were intact except for some decreased pinwheel perception along the lateral calf on the left compared to the right. Dr. Friedman opined that claimant was possibly experiencing some signs of nerve root irritation or pain as a result of a narrowing of the disc space that occurred in response to the chemonucleolysis. He stated that some of the symptoms might be transient and wanted to reexamine claimant in three weeks.
 
 
 7
 On April 24th, 1985, an examination by Dr. Friedman revealed that claimant had reasonably good strength. There was a slight reduction of left ankle jerk. Examination of the back showed some tightness of the paraspinal muscles, although after stretching she was able to go through a reasonably good range of motion without apparent discomfort. Dr. Friedman opined that claimant was doing reasonably well and recommended stretching exercises for her back, which he hoped would relieve some symptoms, although he felt some symptoms could persist.
 
 
 8
 Two years later Dr. Friedman wrote a letter stating that his last examination of claimant revealed significant paraspinal muscle tightness and back movements that were not very smooth. He felt that claimant was still suffering from symptoms of chronic lower back strain and possible low grade radiculopathy secondary to a central disc protrusion at L4-5 level. He stated that any sustained physical activity seems to aggravate claimant's symptoms and as a result he considered her disabled and unemployable.
 
 
 9
 On January 9, 1987, claimant was examined by Dr. Kim at the request of the Michigan Disability Determination Program. Dr. Kim found that claimant had a normal gait and was able to walk on her toes. On heel walking, she had some discomfort on the left side. For the cervical spine, range of motion was normal. Straight leg raising was 90 degrees to the right, 60 degrees to the left. There were no definite ongoing inflammatory signs of swelling, redness, or warm sensation involving major joints of her extremities. There was a full range of motion of the upper and lower extremities. There was diffused tenderness in multiple joints, including paraspinal muscles of the cervical and lumbrosacral spine. Dr. Kim opined that regarding her low back, claimant had symptoms related to radiculopathy and would need continuous medical attention and treatment.
 
 
 10
 As evidence of her allegation of lupus, claimant submitted a July 10, 1987, letter of Dr. Brickman, her treating physician, who was head of the Sinai Hospital Lupus Clinic. The doctor related that a positive diagnosis of lupus required the presence of at least four out of eleven possible criteria. His letter stated:
 
 
 11
 For your own files, I should state that the following four [sic] criteria make me suspect the diagnosis of lupus in Ms. Crouch: 1) false-positive syphilis test; 2) recurrent ulcers in the mouth; 3) color changes to the hands and feet upon exposure to cold; 4) joint symptoms; 5) a positive ANA test. If each of these criteria is truly positive in Ms. Crouch then she has five criteria which would clearly establish the diagnosis. It is, however, difficult to be certain since I do not have evidence presently of mouth ulcerations or color changes in her extremities and I have not received the medical records when she had documentation of her false-positive syphilis test. Her syphilis test is presently negative.
 
 
 12
 In a decision rendered on November 18, 1987, the ALJ concluded that the diagnosis of lupus was not clearly established. Because Dr. Brickman noted that there was no evidence of mouth ulcerations or skin color changes, and no false positive syphilis test, there were actually only two of the required four symptoms to indicate a diagnosis of lupus.
 
 
 13
 The ALJ found that claimant had a severe impairment, but did not meet one of the listed impairments. The ALJ found that claimant could not return to her past relevant work, but retained the ability to perform a wide range of sedentary work, and used the Medical-Vocation Guidelines to conclude that she was not disabled.
 
 
 14
 Subsequent to the ALJ's decision, Dr. Brickman wrote another letter on December 18, 1987, which was submitted into the record. In this letter, Dr. Brickman stated:
 
 
 15
 In light of the information that you have brought to my attention regarding the history of a positive VDRL [syphilis test] and considering the opportunity I have had to acquaint myself better with Mrs. Crouch over the past several months, I am quite comfortable with diagnosing Mrs. Crouch as a patient with lupus (Systemic Lupus Erythematous). Incidentally, our ANA test which is the best test in existence for documentation of that diagnosis has been repeatedly positive here at Sinai Hospital on two separate occasions....
 
 
 16
 I have reread the letter which I mailed to you earlier this year dated July 10, 1987. Unfortunately, I think my letter is misleading. I would like to now clearly set the record straight that I believe Mrs. Crouch most likely has lupus as an explanation for her blood findings and her history and physical examination.
 
 
 17
 However, the Appeals Council denied review on April 14, 1988, and the ALJ's determination thus became the final decision of the Secretary.
 
 
 18
 Claimant appealed to the district court pursuant to 42 U.S.C. § 405(g). The district court referred the case to a United States Magistrate. On November 30, 1988, the magistrate recommended that the court grant claimant's motion for summary judgment. The magistrate concluded that the Secretary's decision was not supported by substantial evidence and should be reversed. The magistrate stated that the medical evidence clearly showed that claimant suffered from lupus, which was a condition of such severity it could reasonably be expected to be the source of claimant's alleged disabling muscle and joint pain. After consideration of the Secretary's objection to the magistrate's report, the district court rejected the magistrate's report and recommendation and affirmed the Secretary's denial of benefits. The district court agreed with the magistrate that given the nature of lupus and Dr. Brickman's opinion, based on the disease's classic symptoms and tests traditionally employed, there was objective medical evidence of lupus. However, the district court was not convinced that lupus is a condition "of such severity that it can reasonably be expected to produce the alleged disabling pain." The district court concluded that the medical evidence did not confirm the severity of the pain alleged from lupus or from the lower back disorder and, accordingly, affirmed the Secretary's denial of benefits. Claimant timely filed this appeal.
 
 II.
 
 19
 This court has jurisdiction on appeal to review the Secretary's decision pursuant to 42 U.S.C. § 405(g) which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir.1981) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)), cert. denied, 461 U.S. 957 (1983). In determining whether the Secretary's findings are supported by substantial evidence, we must examine the evidence in the record "taken as a whole," Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and we " 'must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of Health, Educ. & Welfare, 577 F.2d 838, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam).
 
 
 20
 We review appellant's allegations of disabling pain due to lupus and a lower back disorder under the following standard. Initially, there must be objective evidence of an underlying medical condition. If such evidence exists, there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged disabling pain. Duncan v. Secretary of Health & Human Servs., 801 F.2d 847, 853 (6th Cir.1986).
 
 III.
 
 21
 The Secretary argues that in regard to lupus, neither prong of the Duncan test has been satisfied. The Secretary contends that objective medical evidence of an underlying condition of lupus is lacking because Dr. Brickman did not submit the ANA test results that would confirm his statements and the only false positive VDRL test result was weakly reactive and was performed in January 1974, more than ten years prior to the date claimant's alleged disability began.
 
 
 22
 Claimant argues that there is substantial evidence of an underlying condition of lupus. Claimant's treating physician has stated "I am quite comfortable with diagnosing Mrs. Crouch as a patient with Lupus...." Moreover, claimant argues, there is evidence in the record to corroborate the existence of positive ANA and VDRL studies, and of low grade fevers. Claimant relies on Preston v. Secretary of Health and Human Servs., 854 F.2d 815, 820 (6th Cir.1988) for the proposition that when a disease is difficult to diagnose and evaluate and a physician has done "all that can be medically done to diagnose ... [by] systematic elimination of other diagnoses ... and observation of ... classic symptoms," the objective support prong of Duncan has been satisfied.
 
 
 23
 The Secretary argues that the present case is distinguishable from Preston because the disease at issue in Preston, fibrositis, cannot conclusively be confirmed by objective tests, whereas there are specific criteria available for the diagnosis of lupus.
 
 
 24
 We find that the objective evidence of an underlying condition of lupus is equivocal. There is evidence in the record of positive ANA tests, which, Dr. Brickman states, is the best test in existence for documentation of a diagnosis of lupus. Dr. Brickman states that claimant "most likely has lupus as an explanation for her blood findings and her history and physical examination." However, there is not substantial evidence of at least four out of eleven possible criteria required for a positive diagnosis of lupus. Even if Dr. Brickman's statement were found to be substantial evidence of an underlying condition of lupus, claimant would still have to meet the second prong of the Duncan test.
 
 
 25
 We agree with the Secretary that there is not substantial evidence to satisfy the second prong of the Duncan test, i.e., there is no objective medical evidence to confirm the severity of the alleged pain and the objectively determined medical condition is not of the severity which can reasonably be expected to give rise to the alleged disabling pain. Dorland's Illustrated Medical Dictionary (1981) states, in part: "[L]upus ... is a generalized corrective tissue disorder, affecting mainly middle-aged women, ranging from mild to fulminating...." (emphasis added), quoted in Buettner v. Secretary of Health and Human Servs., 686 F.Supp. 616, 617 n. 1 (W.D.Mich.1988). Thus, the adequacy or inadequacy of the medical evidence of severe disabling pain caused by lupus is determinative in the present case.
 
 
 26
 Claimant argues that the following passage from Dr. Brickman's letter of July 10, 1987, is substantial evidence of her severe disabling pain:
 
 
 27
 The most debilitating of Ms. Crouch's symptoms, however, are her joint and muscle soreness. This soreness, as in many patients like Ms. Crouch, can be severely debilitating some days and considerably better on other days. In nearly all patients, prolonged work or stress will trigger an exacerbation of these joints and muscle complaints. Therefore, I would find it difficult for Ms. Crouch to be able to sustain a 40 hour, 5-day work week.
 
 
 28
 We find this evidence to be equivocal. Dr. Brickman does not indicate the degree of difficulty claimant is likely to encounter and does not indicate whether medication or work environment accommodations could be helpful. See Buettner, 686 F.Supp. at 620 (plaintiff's lupus was well controlled by medication during alleged period of disability). Moreover, the medical record of Dr. Kim showed that although there was diffused tenderness in multiple joints and along the paraspinal musculature, there were no definite ongoing inflammatory signs of swelling, redness or heat in the major joints of any of the extremities. We, therefore, find there is not substantial evidence of severe disabling pain due to lupus and affirm the decision of the Secretary on this issue.
 
 IV.
 
 29
 Claimant finally argues that the Secretary erroneously concluded that her allegations of debilitating back pain are not supported by substantial evidence. The Secretary conceded that the first prong of the Duncan standard had been met, i.e., there is objective medical evidence of an underlying medical condition of a lower back disorder. However, the Secretary found that claimant failed to meet the second prong of the Duncan standard.
 
 
 30
 We find that there is substantial evidence in the record to support this finding because neither of the alternative tests of the second prong of the Duncan standard is satisfied. The record, as a whole, "shows a consistent absence of many of the findings in connection with neurological examinations which normally occasion complaints of severe pain." Mullen v. Bowen, 800 F.2d 535, 547-48 (6th Cir.1986) (en banc). There was no muscle spasm, and only minimal atrophy of the left leg was evident. Although there were slight sensory deficits along the left calf and foot, there were no motor abnormalities and no reflex deficits except a slight reduction in the left ankle jerk. Range of motion studies revealed close to full spinal mobility with only minimal limitations. In addition there was full mobility in all the joints of the upper and lower extremities.
 
 
 31
 Although Dr. Friedman, a treating physician, stated that he considered claimant disabled, it is unclear whether he had examined claimant in the past two years and his conclusion is not supported by objective evidence. Landsaw v. Secretary of Health and Human Servs., 803 F.2d 211, 214 (6th Cir.1986) (treating physician's statement of disability must be supported by underlying clinical data). We find that the absence of any significant neurological deficits and atrophy supports the Secretary's conclusion that claimant's allegation of severe disabling pain due to low back disorder is not confirmed by the objective medical evidence. Moreover, there is a lack of medical evidence to document the presence of a back condition that could reasonably be expected to cause severe disabling pain.
 
 
 32
 For the above reasons, we affirm the decision of the Secretary that claimant is not disabled and, therefore, not entitled to disability insurance benefits.
 
 
 
 [1]
 Claimant also applied for disability benefits on July 19, 1984. This application was denied initially and upon reconsideration. Claimant sought judicial review in the United States District Court for the Eastern District of Michigan and the district court upheld the Secretary's decision. Claimant sought no further review. Accordingly, no jurisdiction exists to review the Secretary's decision on the prior application. Wills v. Secretary, Health and Human Servs., 802 F.2d 870, 871 n. 2 (6th Cir.1986)