59 F.3d 171
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Wade A. EVANS, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 94-5745.
 United States Court of Appeals, Sixth Circuit.
 June 19, 1995.
 
 Before: SUHRHEINRICH and DAUGHTREY, Circuit Judges; HEYBURN, District Judge.*
 PER CURIAM.
 
 
 1
 Wade Evans appeals the district court's judgment affirming the Secretary's final decision that Evans' disability under the Social Security Act ceased as of June 7, 1989. Evans contends that the district court erred because the evidence was insufficient to show that his condition no longer met the severity of listing 1.05(C), 20 C.F.R. Sec. 105(C), which governs disorders of the spine.[1] For the following reasons, we AFFIRM.
 
 I. PROCEDURAL BACKGROUND
 
 2
 Evans worked as a machinist when he injured his back at work in 1985. He claims that his back condition causes severe back and leg pain and weakness in his arms which prevents him from working. Evans applied for and received disability benefits with an onset date of April 15, 1985. Evans' claim was reevaluated, and on June 7, 1989, he learned that he was no longer considered disabled and this his benefits would cease in August 1989. Evans took full advantage of the review process, eventually seeking judicial review of the final decision pursuant to Sec. 405(g) of the Social Security Act.
 
 II. STANDARD OF REVIEW
 
 3
 On review, the Secretary's factual findings are conclusive when supported by substantial evidence. 42 U.S.C. Sec. 405(g). Substantial evidence in a termination case is evidence that demonstrates that there is medical improvement in the impairment and that improvement is related to the claimant's ability to do work. 42 U.S.C. Sec. 423(f)(1)(A); Cutlip v. Secretary, 25 F.3d 284, 286 (6th Cir. 1994). The evidence must also show that the claimant is able to engage in substantial gainful activity at the time of the hearing, not merely at the time of the cessation decision under review.
 
 III. ANALYSIS
 
 4
 Here the ALJ followed the procedure outlined in 20 C.F.R. Sec. 404.1594 to determine whether Evans' disability continued or ended. Pursuant to the regulation, the ALJ first determines if there has been any medical improvement[2] in the claimant's impairment. If improvement is found, the ALJ determines whether the improvement is related to the claimant's ability to work. If it is, the Secretary must show that the claimant is currently able to engage in substantial gainful activity. If the claimant is able to do so, he is no longer disabled. 20 C.F.R. Sec. 404.1594.
 
 
 5
 After completing the proscribed analysis, the ALJ found Evans was not disabled because his "borderline intellectual functioning, impaired hearing with dizziness, spinal stenosis, phlebitis in the left leg, and cervical spondylosis" did not meet the impairment requirements listed in Appendix 1, Sec. 105(C). Under Sec. 1.05(C), evidence must show vertebrogenic disorder accompanied by "[p]ain, muscle spasm, and significant limitation of motion in the spine; and ... [a]ppropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss." (Emphasis added.)
 
 
 6
 Because the record lacked evidence of an appropriate radicular distribution of significant motor loss being present at any time since June 7, 1989, we hold that the ALJ properly concluded that Evans' disability ceased. Specifically, the ALJ noted that Evans suffered no more than a mild to moderate degree of limitation in dorsal lumbar spine movements since early 1989; that facet and epidural blocks had relieved pain; that no significant muscle weakness in the upper extremities had been detected, all of which supported the conclusion that Evans enjoyed a decrease in the medical severity of his impairment.
 
 
 7
 The evidence supports this conclusion. At the time of Evans' disability, he suffered herniated discs, muscle spasms, severe range of motion limitations in the lumbar spine, severe back pain and muscle weakness in the upper extremities. Since that determination, however, he suffered only "mildly bulging discs and mild hypertrophic degenerative changes in the lumbar spine." (Rec. p. 22.) During the many examinations since early 1989, physicians found no more that a mild to moderate degree of limitation in dorsal lumbar spine movements.
 
 
 8
 In May 1989, Dr. Fritzhand, a consulting physician, examined Evans and found Evans was not suffering from muscle spasm in the lumbar spine. Dr. Fritzhand also detected minimal muscle weakness and that atrophy was limited to the left gluteus. Further, Dr. Fritzhand detected no radicular distribution of significant motor loss, no sensory deficits, no deep tendon reflex deficits or limitations of muscle strength in the upper extremities and no muscle spasms. The doctor did note, however, that light touch sensation was decreased over the left lower extremity and achilles tendon reflexes were absent. Dr. Fritzhand diagnosed mild degenerative joint disease of the lumbar spine. In July 1989, Evans' treating physician confirmed the degenerative joint disease diagnosis and also found acute lumbosacral strain.
 
 
 9
 The ALJ next reasoned that the improvement related to the ability to perform basic work activities such as lifting, carrying, bending, standing and walking. Thus, both prongs of the Cutlip test were met.
 
 
 10
 The evidence marshalled by Evans to rebut the ALJ's conclusion include his subjective complaints and the opinion of his treating physician, Dr. Bal Bansal. The record is replete with evidence that Evans reported pain, numbness in his extremities, and that he walked with a limp. Nevertheless, under Sec. 1.05(C), Evans must show "significant motor loss with muscle weakness and sensory and reflex loss." The complaints of pain do not undermine the objective medical evidence that motor loss was minimal.
 
 
 11
 As to Evans' claim that the ALJ failed to give greater weight to his treating physician than the consulting physician, we find it inconsequential. Dr. Bansal wrote a letter concluding that Evans was "totally and permanently disabled." (Rec. p. 482.) The letter, however, did not refer to any objective evidence to substantiate the conclusion, and the ALJ found the conclusion inconsistent with the objective evidence of Evans' medical condition since 1989. Accordingly, the ALJ properly disregarded the opinion. See Crouch v. Secretary, 909 F.2d 852, 857 (6th Cir. 1990) (holding that a treating physician's opinion must be supported by underlying clinical data).
 
 
 12
 In sum, the record contains sufficient evidence to support the Secretary's assessment of Evans' medical condition, and we AFFIRM.
 
 
 
 *
 The Honorable John G. Heyburn II, United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [1]
 Additionally, Evans argued that the hypothetical question posed by the ALJ to the vocational expert did not accurately reflect his limitations and therefore the expert's testimony did not constitute substantial evidence. Evans raised no objection to the magistrate's report and recommendation on this ground; consequently, he waived his right to appellate review of this issue. Thomas v. Arn, 474 U.S. 140, 147-48 (1985)
 
 
 [2]
 Medical improvement is defined as "any decrease in the medical severity of [claimant's] impairment(s) present at the time of the most recent favorable medical decision" of disability or continued disability. 20 C.F.R. Sec. 404.1594(1). This determination is based on "changes (improvement) in the symptoms, signs or laboratory findings associated" with the impairment. Id