William D. GOWER, Plaintiff–
Appellant,

v.

Kenneth S. APFEL, Commissioner
of Social Security, Defendant–
Appellee.

No. 00–5190.

United States Court of Appeals,
Sixth Circuit.

April 11, 2001.

Before JONES, BATCHELDER, and CLAY, Circuit Judges.

CLAY, Circuit Judge.

Plaintiff, William D. Gower, appeals from the district court's order entered on October 26, 1999, denying Plaintiff's motion for summary judgment while granting summary judgment to Defendant, Kenneth S. Apfel, Commissioner of Social Security, on Plaintiff's application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 401 *et seq.* For the reasons set forth below, we REVERSE the district court's order granting Defendant's motion for summary judgment and denying Plaintiff's motion for summary judgment, and REMAND the case for a determination as to whether Defendant can demonstrate that there is work in the national economy that Plaintiff can perform.

## BACKGROUND

On October 12, 1995, Administrative Law Judge "('ALJ') Robert C. Laws issued a decision stating that based on [Plaintiff's] testimony and the testimony of the vocational expert, it is concluded that [Plaintiff] could perform his past relevant work, as a property manager and a house sitter." Accordingly, the ALJ concluded that Plaintiff was not disabled for purposes of receiving disability benefits under the Act. Plaintiff requested review by the appeals counsel, which was denied, thereby making the ALJ's decision that of Defendant for purposes of judicial review.

Plaintiff filed suit on August 20, 1996; both parties filed motions for summary judgment, and following briefing by both parties, Magistrate Juliet E. Griffin issued a report and recommendation affirming Defendant's decision. Plaintiff filed objections to the magistrate's report and recommendation; however, on October 26, 1999, the district court adopted the report and recommendation, and granted Defendant summary judgment while denying Plaintiff summary judgment. This appeal ensued.

## Facts

Plaintiff claims that he is disabled based on residual chronic pain from a gunshot wound to his left thigh which occurred in 1957 when he was approximately ten years old. The gunshot wound "tore up" and caused vascular and nerve damage to Plaintiff's left leg which interfered with the growth of his left leg and foot. Plaintiff quit school after the eighth grade and worked from approximately 1969 to 1989 as an automobile mechanic. Then, from 1989 to 1992, he cared for his mother-in-law's estate, which consisted of a house on two acres of land, for which he was paid approximately $350 per week. At some point in his work history, Plaintiff also worked for two of his brother-in-laws in the housing construction industry by carrying lumber and other items.

Plaintiff contends that because of the severe pain in his leg and his back, he could no longer work, and claimed a disability date of October 30, 1992. Since that time, Plaintiff has worn a brace on his left leg claiming that "I have no feeling, I have no use of my left foot, and I can hardly walk without it." About one week before the hearing, Plaintiff sought treatment at the Nashville Pain Clinic, and was prescribed two medications to help relieve the pain in his back and in his leg; specifically, Plaintiff was prescribed trazodone and clonazepam. Plaintiff also began using a cane about once or twice a week for instances he described as "mostly [when] I'm going to be out or be on my feet a lot or very long at a time or something."

At the time of the hearing, Plaintiff was divorced and lived with a female companion and his fifteen-year-old son from his marriage. Plaintiff opined that his daily activities had decreased since becoming disabled such that, in addition to no longer working, he could no longer hunt or fish because he could not walk. He claimed that his daily activities were now limited to some housekeeping, cooking, doing part of the laundry, and driving to a store or to visit a nearby relative.

About a week before the hearing, Plaintiff sought treatment at the Mental Health Clinic in Lawrenceburg, Tennessee. Plaintiff stated that he sought treatment "[b]ecause of everything just piling up on me. I mean, I can't do a lot, I have financial problems at this time, and I got a child I'm trying to take care of and no help from his mother. . . ." No medical report was provided by the Mental Health Clinic at the time of the hearing.

Plaintiff's brothers, Arnold Staggs, Alvin Gower, and Darrrell Staggs, all testified at the hearing. Each of the men saw Plaintiff in varying intervals ranging from a few times per week to monthly. Each testified that Plaintiff's condition had gotten worse as time went on and that Plaintiff no longer engaged in the same activities that he enjoyed at one time. Alvin Gower corroborated Plaintiff's testimony as to his condition.

Vocation expert ("VE"), Gina Thomas, testified at the hearing. The ALJ posed the following question to the VE based upon the medical reports:

First evaluation was [sic] have is from the treating physician, Dr. Wence. That's been entered as Exhibit 25, and he says in his report that he has no real impairment-related physical restrictions. That's dated January the 18th of '93 and then he said there's been no further evaluation since then. Dr. Moore, also a treating physician, saw the claimant in March of last year and gives the following physical restriction. He says this individual can carry 25 pound[s] up to a third of the day, 15 pounds from a third to two-thirds of the day, that he can stand or walk two hours, 15, 20 minutes without interruption. He can sit four hours, 30 minutes without interruption. He should never climb, balance, stoop, crotch, kneel, crawl. And then he further adds to the medical assessment by saying that he can lift 20 pounds occasionally, ten pounds frequently. He's reduced it a little from what he said originally, and he says he can walk an hour, stand two hours, and sit three hours and that his reaching is unimpaired. Now, what level of work activity are we talking about there?

(J.A. at 216–17.) The VE responded to this inquiry by stating that Plaintiff's level of work activity was at "limited light." The ALJ clarified that the VE's assessment meant that Plaintiff could not work full-time; he could only work up to a maximum of six hours per day. When asked if Plaintiff could perform his prior work as an automobile mechanic, the VE testified that Plaintiff could no longer perform this work because it was classified as "heavy" work.

The ALJ then asked if Plaintiff could perform his prior work as a property manger, at which point the following colloquy occurred between the ALJ and the VE:

VE: Based on how he described it today by watching over a rental property I don't think that would be classified as a property manager because generally you need to be showing property to different participants and you know, examining it to make sure that it's in proper selling order and -

ALJ: It sounded to me like he had some kind of special arrangements there with his mother-in-law who was (INAUDI-

BLE) just to occupy the house to keep anybody from breaking in, that type of thing so I didn't believe we can really consider that as a part of his past relevant work, however, we can consider it on the basis of any experience he may have gleaned from that and possibly and skills he may have acquired there. Now, can you equate with he did at that time with any other job identification that would be similar to it?

VE: The only similar job would be that of a house sitter or an attendant.

ALJ: Is there such a job as a house sitter?

VE: Yes.

ALJ: What is that exertionally and what skill level?

VE: I believe it's at—it's either sedentary or light, and it is—I believe it's unskilled.

ALJ: Could he perform the job as a house sitter, assuming he could do it eight hours? Could he perform the job as a house sitter under those restrictions?

VE: With the never climbing -

ALJ: Yes.

VE:—if there was stairs or any steps at the household, that would prevent him, however, if it was just a one-level home, *he would be able to perform that job.*

ALJ: All right. You don't have statistical information to tell me how may one-level homes there are, do you?

VE: No, I do not.

ALJ: I think generally when they talk about climbing they're talking about ladders and things of that nature, not the negotiation of stairs so if you don't consider that an impediment then-

VE: Then it would be available to him.

(J.A. at 216–19 (emphasis added).)

The ALJ inquired as to whether Plaintiff's working as a house sitter six hours per day would pay enough to meet the requirements of substantial gainful activity, to which the VE responded that if Plaintiff made minimum wage and worked six hours per day, five days per week, he would make enough for it to be considered substantial gainful activity. The VE opined that Plaintiff would still be able to perform this work with mild to moderate pain, but not with a more severe level of pain. When asked by Plaintiff's counsel if he could perform this work with chronic pain, the VE responded that if the pain was severe and intractable, then Plaintiff could not perform the work.

As noted by the ALJ, several opinions from various doctors Plaintiff had seen over time were looked at during the hearing. Dr. Moore, who first examined Plaintiff in the Middle Tennessee Bone and Joint Clinic on April 13, 1993, as to Plaintiff's left leg discomfort, found "hypesthesia from the knee down" with "no active functionable muscles below the knee." Plaintiff returned to Dr. Moore on May 21, 1993 for a new brace; he returned again on July 14, 1993, with more discomfort in his leg, for which he was prescribed sulindac, because Dr. Moore believed "that possibly a course of anti-inflammatories may help to diminish some of his pain."

Less than six months later, on March 31, 1994, Dr. Moore completed a medical assessment, indicating that in an eight-hour workday, Plaintiff could occasionally lift 25 pounds and frequently lift 15 pounds, based on his medical finding that "Pt has sciatic nerve palsy and significant atrophy & weakness of leg;" in addition, based on the same medical finding, Dr. Moore found that Plaintiff could stand and/or walk a total of 2 hours (15–20 minutes without interruption), and that Plaintiff could sit for 4 hours (30 minutes without interruption). Dr. Moore also indicated that Plaintiff could never climb, balance, stoop, crouch, kneel, or crawl, but was unimpaired as to his ability to reach, handle,

feel, push/pull, see, hear, and speak and was unencumbered by environmental restrictions caused by his impairment. On the same assessment, Dr. Moore indicated that Plaintiff could "lift 20 pounds occasionally to 10 pounds frequently," could walk for one hour, stand for two hours, and sit for three hours. Dr. Moore found no other impairment to those already stated except for chronic pain.

## DISCUSSION

This Court reviews a District Court's order granting summary judgment *de novo. Smith v. Ameritech,* 129 F.3d 857, 863 (6th Cir.1997). In *Crouch v. Secretary of Health & Human Services,* a panel of this Court stated as follows regarding the Court's review on a social security appeal:

> This court has jurisdiction on appeal to review the Secretary's decision pursuant to 42 U.S.C. § 405(g) which specifies that the Secretary's factual findings are conclusive if supported by substantial evidence. " 'Substantial evidence' means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " In determining whether the Secretary's findings are supported by substantial evidence, we must examine the evidence in the record "taken as a whole," and we " 'must take into account whatever in the record fairly detracts from its weight.' " If it is supported by substantial evidence, the Secretary's determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently.

909 F.2d 852, 855 (6th Cir.1990) (citations omitted).

An individual is considered disabled under the Act, "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further provides that

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

■ The regulations outline a five-step analysis for evaluating disability claims. *See* 20 C.F.R. § 404.1520. Under the fourth step, Defendant is to determine whether a claimant is capable of performing past relevant work. Specifically, this step provides as follows:

> If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.

20 C.F.R. § 404.1520(e). "During the fourth step, the burden is upon the claimant to show that his disability prevents him from performing any substantial gainful employment for the statutory period. Once, however, the claimant makes a prima facie case by showing that he cannot perform his usual work, the burden shifts to the [defendant] to show that there is work in the national economy which he can

perform." *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1053 (6th Cir.1983).

■ In the case at hand, the issue comes down to whether substantial evidence supports Defendant's finding that Plaintiff was not disabled because he is still able to perform his past work as a house sitter. Plaintiff argues that substantial evidence does not support Defendant's finding because the VE's testimony concerning the job of a house sitter was not specific enough for the ALJ to have decided that Plaintiff was capable of performing this job, particularly when the ALJ failed to properly credit Plaintiff's subjective complaints of pain, and failed to acknowledge the lay witness testimony corroborating Plaintiff's pain and restriction of activities. Because we believe that the ALJ's conclusion that Plaintiff is able to perform his prior work is not supported by substantial evidence, we shall limit our discussion to that argument.

When evaluating whether a claimant can perform past relevant work, the regulations mandate that the claimant's residual functional capacity ("RFC") be determined. *See* 20 C.F.R. § 404 .1520(e); § 416.960. Here, although not expressly stated as Plaintiff's RFC, the VE opined that Plaintiff's level of work activity was "limited light." The VE then concluded that based upon Plaintiff's limitations, he could return to work as a house sitter for six hours per day making minimum wage which would qualify Plaintiff as meeting the requirements of substantial gainful activity. Based upon the VE's assessment, the ALJ concluded that Plaintiff was not disabled.

Plaintiff challenges the ALJ's conclusion for several reasons. First, Plaintiff claims that the VE was asked if Plaintiff could return to his previous work as a property manager, and it was only after the VE and the ALJ decided that Plaintiff was not really a property manager based upon the duties he had while working for his mother-in-law, that the VE opined that the job of a house sitter was similar to the job that Plaintiff performed for his mother-in-law. Plaintiff claims that the VE's opinion was as to a similar job, not as to the same job that Plaintiff performed, and therefore should not have been considered. Plaintiff's claim in this regard is without merit where the *type* of work will be considered when examining a Plaintiff's relevant past work, not just his former job.[1] *See* 42 U.S.C. § 423(d)(2)(A); *see also Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir.1995) ("By referring to the claimant's ability to perform a 'kind' of work, [the regulations] concentrate[ ] on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it.")

Next Plaintiff contends that the VE's opinion that Plaintiff was able to continue working as a house sitter was not supported by the evidence, where the VE's opinion was limited to one-level homes and the VE had no statistical information as to the number of one-level homes for this type of service. We agree with Plaintiff's contention and we further find that the ALJ engaged in speculation when he went on to consider Plaintiff working as a house sitter in multi-level homes for purposes of meeting step five of the analysis.

---

1. Because we believe that the ALJ properly concluded that the work Plaintiff performed for his mother-in-law, work for which Plaintiff was paid $350 per week for a period of approximately three years, was properly char- acterized as the type of work performed by a house sitter for purposes of past relevant work, we disagree with the concurrence that Plaintiff's case should be remanded for a determination as to step four of the analysis.

Upon hearing the VE opine she did not have any statistical information regarding the number of one-level homes in need of this service, and that if there were stairs or any steps at the household Plaintiff would not be able to perform his job as a house sitter, the ALJ replied, "I think generally when they talk about climbing they're talking about ladders and things of that nature, not the negotiation of stairs so if you don't consider than impediment then -." Based upon the ALJ's speculation regarding Dr. Moore's assessment that Plaintiff was unable to climb did not include stairs, the VE concluded that Plaintiff was able to work as a house sitter in home with more than one level. However, the VE's conclusion was based upon the ALJ's speculation as to the medical evidence. Accordingly, all of the VE's further opinions as to Plaintiff's working as a house sitter in a home with more than one level, such as the amount of money Plaintiff had the ability to make, are called into doubt.

Thus, we are left with a record that provides nothing as to the availability of one-level homes in which Plaintiff could work as a house sitter, and a record that engages in speculation regarding Plaintiff's ability to work as a house sitter in homes with more than one level. We therefore conclude that the ALJ's decision that Plaintiff was not disabled is based upon the ALJ's speculative interpretation of the record, and not upon substantial evidence. Because we conclude that Plaintiff established a *prima facie* through step four of the analysis, we remand the case for a determination as to whether Defendant is able to demonstrate that there is work in the national economy that Plaintiff is able to perform under step five. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 684 (6th Cir.1992); *Lashley*, 708 F.2d at 1053 (noting that once the claimant has demonstrated that he can no longer perform his usual work, the burden shifts to the defendant to show that there is work in the national economy that the claimant can perform).

## CONCLUSION

For the above stated reasons, we RE-VERSE the district court's order granting Defendant summary judgment, and RE-MAND the case back for a determination as to whether Defendant can demonstrate that there is work in the national economy that Plaintiff can perform.

BATCHELDER, Circuit Judge, concurring in the judgment.

I agree with the lead opinion's conclusion that the district court's judgment should be reversed and the case remanded for a step five analysis as to whether Defendant can demonstrate there is work in the national economy that Plaintiff can perform, however, I would like to make a distinction. I write separately because I do not think we reach the question of whether substantial evidence supports the ALJ's factual finding that Plaintiff could perform past relevant work. Rather, I think the ALJ erred as a matter of law in determining that Plaintiff's past relevant work included what he did for his mother-in-law.

For an activity to be considered past relevant work, it "must first be found to rise to the level of substantial gainful activity." *Lauer v. Secretary of Health and Human Serv.*, 818 F.2d 636, 639 (7th Cir. 1987). Work is not substantial gainful activity "if you are doing work that involves minimal duties that make little or no demands on you and that are of little or no use to your employer...." 20 CFR 404.1573(b). While Plaintiff may ultimately be denied under a step five analysis, he may not be denied at step four, as the ALJ did in this case, if the past work is not substantial gainful activity.

I would therefore remand for a complete step four and subsequent step five analysis.